Thank you, good morning, good evening, good morning. My name is Katie Hammond. Welcome to the New College Hotline. Mr. Williams is turning in January 7th because he is challenging a public elective to work out a viable justification for this, in favor of arguing reasonable terms. Mr. Williams is testifying, so welcome to her defense. Thank you, Katie. I mean, what to do about that? I'm going to bring your conclusion. And I think I had a medical post during the trial as to whether if somebody were to text the other person who was talking to Farrah, would that be a constructive decision? Under the instruction of the student, the jury arguably is a constructive decision. You know, there is no excuse to redirect a firearm into a gun, so it could be just using the firearm without grabbing the firearm, instead of just pushing the person who has the firearm down, because it's sort of a different position. It matters if the agency has a spouse that is dangerous, that charges not just the possession of the firearm, but also possession in addition. So in doing so, you're redirecting the firearm, you're either receiving some greater control of the gun, or you are redirecting half of the ammunition, which also, by the way, seems to have changed the course of the event. It's a question, which is this, that in the trial order, you gave some pretty harsh, strategic voices for not wanting to pursue the unjustification defense. Are we required to increase those? Or are they reasonable on the basis they are here? It carries several other things, but the problem is that, in my point, Justice Adelsberg and I, as the subject of the client's testimony, was essentially adding to the test. It's kind of, at least in its required fashion, that the reason that you don't want to end possession of a client doesn't really help in the sort of circumstances based on, well, especially not on the legal side. I mean, it's not a great thing. And the reason that the justification defense does not stand out is that there are still some arguments on the other side. So you're trying to hide and you're dependent. When your only viable claim on after-product purchase task was trying to keep an eye on his prior convictions, which would be with a small, maybe disordered group of clients that were pursued, and you sat and you agreed to this whole question of whether there was an issue of possession or not, and you said, oh, well, maybe he's completely behind you, or at least not up to your level, you can try to mark the issue of many parties around. I mean, in this case, the only viable defense was to make sure she knew that her client was testifying, she knew that he was testifying, so she should have known that if my testifying and her testifying can give us potentially an even government, then that's going to be a priority to the conviction, which is not an alternative theory of possession. That was the driver's side of it. So they worked with the money-debt strategy, and the other people who were interested in the offense were the money-debt strategy, which was easier to deny and was the only viable defense. The other aspect of this case is that the prejudice here was that the government's argument asserted it was lying. In other words, the government is arguing that if you believe Mr. Lyons' case, then you're going to be in trouble if Mr. Lyons' case gets in. Mr. Lyons is testifying, and based on the jury's assertions in the year 2018, the issue of possession of the jury questions suggests that at least one of the jurors believed Mr. Lyons' assertion in the story. They were concerned about whether he's been in an instinctive reaction. He would call upon Mr. Lyons' assertion and suggest that at least one of the jurors believed Mr. Lyons' assertion in the facts, and even one of the jurors believed Mr. Lyons' assertion. These aren't even asserts. They are related on the justification defense. We have a very reasonable probability that Mr. Lyons is in this case. So, in a straight-up standard, I don't think you need to do drugs. And that just isn't fairly to recognize that Mr. Lyons is a juror in this case. At the end, for the issue of possession, you choose whether to release him or trial, but the question is, does Mr. Lyons have any opportunity to be released as a juror, and how well does he consider himself as a juror? The attribution system suggests that Lyons is a juror in this case. I think that's a very good question. According to others, Mr. Lyons believes he's a juror in this case. To the extent that there's that straight-to-the-picture, he's also a juror for a very simple case, which is that in any very simple court entry, he has a superlative. We were so insistent that he was being placed in a very fundamentally correct. According to others, there is a question that I ask you as a juror on whether it is your position that somebody generally, somebody else who has a firearm, of being in a constructive position about a firearm being a constructive position, would choose not to be a juror before we got to any sort of a decision. So, my position is that any sort of a point of view is important to follow up on that. You're always going to be in a position for a certain group of people in a household, which is specific to sex. You can keep it in specific folds. You can keep it in a jurisdiction to disrupt the policy, to change anything. If you're in a jurisdiction where there is a specific extension that you have to make a decision, please file what you agree to. It's a little bit of a heavy, and I'm going to call on you, Mr. Williams, because you also have to enter into a jurisdiction and try to alter that strategy. You have to exercise this and retain very clear distinction between the juror being speaking out and arguing that he didn't agree to be in a jurisdiction and, instead, trying to disrupt the game. And there it is. It's important. It shows when there is a jurisdiction, the question is, you should have a jurisdiction of absence that's not just on the machine. For me, it is just a strategy decision. You never search the data. You never assess the data. And this allows us to communicate as a juror strategy. It allows us to, as far as reasonable development, if any jurors are speaking, it's speaking and it's arguing. It's taking some of those rules into account. It's a resuscitation of evidence. It's establishing a reasonable judgment and you get all the decisions you want. Can I answer your question, Your Honor? Actually, I do. So, do you have to answer your comments about whether, in fact, this abortion of 2020 should be deemed perversion? No, Your Honor. I understand my posturing closely from evidence-related practices that you see in your sense of communication is that it's justified. My post-graduate practice was sending people what you can get on what you should be doing. And I apologize if you're going to hear all of the front-end of this. Still, maybe some of your practices are trying to stop you from cheating and so on. And, as long as you understand the intentions of the rest of us that are members of the group that comes from L.A. and understand those objectives and elements that somebody is doing, there was such a sophistication of literature that came out that before you had to re-read it. And, in fact, the court said, well, I don't know if you can answer what's in your mind. We've never, I don't think this court has ever held that the prosecution's view of the evidence is helping to charge people if they're not making good sense of themselves. And this is wrong. We disagree all the time. That's why we have trust. That's why we're here. But, in essence, it was very clear that she was possessive or she had her intention and ability to do both. And that wasn't just a clear excuse. It was a huge determination that she was possessive or had her intention and ability to do both. So, I mean, that's just a lot of truth. But, moreover, she had this support that these institutions wanted to give. If you're a student with an intention to do something, she certainly was. I mean, you're out there and you're applying to something in the community and you start to control this policy and you have these policies that you're seeking. So, there was just a huge amount of concern that she had at these institutions. Very easily, we had one jury officer in this case. There should have been a jury officer. He's lying. I never saw him in this institution before or over. He didn't. He didn't come close. I mean, there is this institution that basically doesn't consider this a task. But, in principle, she was very assertive. She already knew that this institution is very important to other institutions and it remains a priority to get new leaders into this. So, I think one of the key elements of her defense was to make sure that she had education and she wanted to see that strategy see where it was always possible and she wanted to know as far as individuals and students can. I don't know how long it was. I think about that time, which is predatory. I think there's a lot of academic scholars who she never ever has done on teaching. And, there is this institution she should be interested in. She's very concerned about how she inspires her students. She just teaches students. The fact is that she has a strong motivation for successful research. That's what it is. I'm not going to go into    her teaching because   going to go into the specifics of her teaching. I'm not going to
judges: McKeown, Graber, Peterson